SCOTT KEITH WILSON, Federal Public Defender (#7347)
WOJCIECH NITECKI, Assistant Federal Public Defender (#12187)
KRISTEN R. ANGELOS, Assistant Federal Public Defender (#8314)
OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Fax: (801) 524-4060

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACKSON STUART TAMOWSKI PATTON, <br><br> Defendant. | **MOTION TO DISMISS THE COMPLAINT AND DISCHARGE THE DEFENDANT** <br><br> Case No. 2:20-mj-416-DBP |

Jackson Patton, pursuant to the Rule or Criminal Procedure 5.1(f) moves this Court to immediately discharge Mr. Patton because the government failed to establish probable cause of the jurisdictional element of 18 U.S.C. § 844(i). The preliminary hearing occurred on June 25, 2020. This Court deferred its decision and ordered the government to brief the issue of whether the evidence established the jurisdictional element of 18 U.S.C. § 844(i).

### Preliminary Hearing Standard.

The purpose of the preliminary hearing "is to determine whether there is probable cause to believe that a crime has been committed and, if so, probable cause to believe that Defendant committed the crime." United States v. Torchio, 2004 WL 2519226, at *1 (D. Kan. 2004).

"Probable cause exists when the facts and circumstances within the <u>officer's knowledge</u> and of which they had <u>reasonably trustworthy information</u> are sufficient to themselves to warrant a man of reasonable caution in the belief that an offense has been . . . committed." <u>United States v. Miller</u>, 532 F.2d 1335, 1337 (10th Cir. 1976) (citations omitted) (emphasis added).  Every case must "be considered on its own facts."  <u>Miller</u>, 532 F.2d at 1337.

### **Evidence presented at the preliminary hearing.**

Government Exhibit 20, the copy of the felony complaint provides the following in pertinent part:

> The Salt Lake City Police Department regularly conducts business in interstate commerce, for instance by purchasing vehicles and other equipment and supplies in interstate commerce.  The activities of the Salt Lake City Police Department in enforcing laws also affect interstate commerce.

Government Ex. 20, 3-2.

In addition, the government's sole witness, FBI Special Agent Elkington had no personal knowledge and no reasonably trustworthy information to support the finding of probable cause on the jurisdictional element of section 844(i).  To this end, Elkington testified, in general, about how some acts by some Salt Lake City Police Officers could affect interstate commerce.  He candidly admitted on cross-examination that he did not know which officer drove the patrol car to the scene of the protest, he did not know what the officer's assignment was that day, and he did not know anything about this specific patrol car.

### **Elements of 18 U.S.C. § 844(i).**

The element of 18 U.S.C § 844(i) specific to this incident are:

(1) To maliciously damage or destroy, or attempt to damage or destroy;
(2) By means of fire or explosives;
(3) Any vehicle used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.

2

See Jones v. United States, 529 U.S. 848, 850 (2000) (citing 18 U.S.C. § 844(i)) (quotations omitted).

### The government did not meet its burden under Belflower.

In the preliminary hearing the government relied on Belflower v. United States, 129 F.3d 1459 (11th Cir. 1997), because it involved the arson of a police car. As the defense pointed out during the argument and as explained in the next section, Belflower is no longer good law. But even if the case is persuasive, the evidence presented at the preliminary hearing fell short of the standard articulated by the Belflower court.

In Belflower, the court held that the officer "used the automobile in the performance of his law enforcement duties and the performance of those duties clearly represent[ed] an activity affecting interstate commerce." Belflower, 129 F.3d at 1462 (footnote omitted). In that case, the officer's activity affected interstate commerce, as long as that particular officer performed some duties which affected interstate commerce and used the car in the performance of his duties.

Applying the facts of the case, the Belflower court noted that the officer (Deputy Thrower) who used the destroyed Crown Victoria patrolled traffic on Interstate, issued citations to the out-of-state drivers, made drug arrests on Interstate and participated in out-of-state drug investigations. He also ran state and federal warrant checks on a computer, arrested people who lived outside of his home state, recovered stolen property from outside of the state, and attended training outside of his home state. Id. However, the Belflower court made clear that its "holding [was] limited to the facts of this case and [did] not establish a categorical rule that law enforcement is per se an activity that affects interstate or foreign commerce." Id. n.5.

While the Belflower test does not survive Jones, see infra 4, even under that analysis the government's evidence at the preliminary hearing did not meet the jurisdictional element of

section 844(i).  To this end, Agent Elkington did not know which officer drove the car on the day of the incident and he did not know how long this vehicle has been with Salt Lake City Police Department.  For all this Court knows, the car may have been put to use and the officer may have joined the Department on May 30, 2020, the day of the incident.  In addition, Agent Elkington admitted that he had no personal knowledge of whether the car was used to patrol traffic on Interstate, if an officer used the car to issue citations to the out-of-state drivers, or make arrests on Interstate.  He did not know if the car's computer was used to run state and federal warrants, or if the officer used the vehicle to arrest people who lived outside of Utah, or to recover stolen property from outside of Utah.   This testimony clearly did not meet the Belflower standard.

### The government did not present sufficient evidence at the preliminary hearing to establish the jurisdictional element of 18 U.S.C. § 844(i) under Jones.

In Jones, the United States Supreme Court changed the test used by the Circuit Court in Belflower.  It held that the proper inquiry when deciding whether a thing affects interstate commerce is not into the function of the person who controls or uses the thing, but into the function of the thing itself.  See Jones, 529 U.S. at 854-55 (quotations omitted).[1]

Furthermore, the Jones court concluded that "the word 'use,'" in section 844(i) signified "'active employment.'"  Jones, 529 U.S. at 855 (citations omitted).  For this reason, section 844(i) "covers only property currently used in commerce or in an activity affecting commerce." Jones, 529 U.S. at 855. (emphasis added).  Consistent with this, the Tenth Circuit holds that, to affect interstate commerce, a vehicle must be "actively used in interstate commerce." United States v. Grassie, 237 F.3d 1199, 1208 (10th Cir. 2001) (citing United States v. Monholland, 607 F.2d 1311, 1316 (10th Cir. 1979); Jones, 529 U.S. at 854-55).

---

[1] Applying this test, the Jones court concluded that "that an owner-occupied residence not used for any commercial purposes [did] not qualify as property used in commerce or commerce-affecting activity; arson in such a dwelling . . . [was] not subject to federal prosecution under § 844(i)." Jones, 529 U.S. at 850-51.

4

The government's evidence fell short of probable cause on the jurisdictional element of section 844(i) under the Jones test. This Court received no evidence from which it could infer that the patrol car destroyed by the protestors on May 30, 2020, was at that time actively involved in activities affecting interstate commerce. The fact that the Salt Lake City Police Department regularly conducts activities in interstate commerce, even if true, is not enough to support an inference that the patrol car in this case was actively affecting commerce on that date. Similarly, the fact that the vehicle may have been manufactured in another State is an example of passive, rather than active use.

## Agent Wright's affidavit cannot be considered.

Finally, this Court may not consider the affidavit filed by the government on June 25, 2020, in making the probable cause determination. The felony complaint in this case was filed on June 3, 2020. Mr. Patton appeared on June 11, 2020, and was detained. On June 18, 2020, this Court ordered the government to provide discovery to the defense and to produce all witness statements in compliance with the Federal Rule of Criminal Procedure 26.2. The defense received neither as of June 26, 2020. The preliminary hearing took place on June 23, 2020. At the conclusion of the hearing this Court ordered the parties to brief whether the government established probable cause for the jurisdictional element of section 844(i). The government did not seek leave to reopen the hearing. On June 24, 2020, 14 days after Mr. Patton's initial appearance, the government filed the affidavit of Special Agent Jeffrey T. Wright who did not testify at the preliminary hearing.

First, this Court may not consider the affidavit because the defense did not have an opportunity to cross-examine Agent Wright. Rule 5.1 allows the defendant to cross-examine adverse witnesses at a preliminary hearing. See Fed. R. Crim. P. 5.1(f). Because the

government chose to call another Agent at the hearing, Mr. Patton was denied the opportunity to cross-examine Agent Wright. For this reason, the defense objects to the admission of his affidavit in lieu of live testimony and moves this Court to not give it weight in the probable cause determination.

Second, this Court cannot consider the affidavit because the government failed to comply with Rule 5.1(h). Federal Rule of Criminal Procedure 5.1 provides in pertinent part:

> (h) Producing a Statement.
> (1) In General. Rule 26.2(a)-(d) and (f) applies at any hearing under this rule, unless the magistrate judge for good cause rules otherwise in a particular case.
> (2) Sanctions for Not Producing a Statement. If a party disobeys a Rule 26.2 order to deliver a statement to the moving party, the magistrate judge must not consider the testimony of a witness whose statement is withheld.

Fed. R. Crim. P. (h). Rule 26.2 in turn requires that the government produce to the defense "any statement of the witness that is in their possession and that relates to the subject matter of the witness testimony." Fed. R. Crim. P. 26.2(a). "Statement" under rule 26.2 include "a written statement that the witness makes and signs, or otherwise adopts or approves" and "a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcript of a recording." Fed. R. Crim. P. 26.2(f). If the party fails to produce a statement as required, "the court must strike the witness' testimony from the record." Fed. R. Crim. P. 26.2(e). This is consistent to rule 5.1(h)(2) which also instructs the court to disregard the testimony if the party does not comply with its obligations under rule 26.2. See Fed. R. Crim. P. 5.1(h)(2).

Even if this Court decides that the denial of the opportunity to cross-examine Agent Wright does not preclude its consideration of the affidavit in lieu of live testimony, the Court must strike it because the government did not comply with this Court's rule 26.2 order from June 18, 2020. It is apparent from the affidavit, that the Agent interviewed two Salt Lake City Police

6

Officers in preparing the affidavit. Despite this Court's order, however, the government did not provide Agent Wright's reports or transcripts from these interviews to the defense. For this reason, this Court should give no weight to the affidavit of the non-testifying witness which has not been properly admitted into evidence.

Finally, government's failure to establish probable cause at the preliminary hearing needs to be viewed in light of the fact that Mr. Patton has been incarcerated since June 3, 2020, and that, as of today, 15 days have passed since his initial appearance. The government has had ample time to obtain and produce sufficient evidence to establish probable cause at the preliminary hearing. Yet, it appears from Agent Wright's affidavit that the government has not properly investigated the jurisdictional element of section 844(i) until the preliminary hearing was concluded.

## Conclusion

Based on the foregoing analysis, the Defendant asks this Court to find that the government failed to prove probable cause of the jurisdictional element of 18 U.S.C. § 844(i). If this Court so finds, the Defendant moves the Court to dismiss the complaint and release him from custody.

DATED this 26th day of June, 2020.

*/s/ Wojciech Nitecki*
WOJCIECH NITECKI
Assistant Federal Public Defender

*/s/ Kristen R. Angelos*
KRISTEN R. ANGELOS
Assistant Federal Public Defender