ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
J. DREW YEATES, Assistant United States Attorney (#9811)
MICHAEL J. THORPE, Assistant United States Attorney (#11992)
BRYAN N. REEVES, Assistant United States Attorney (#DC 994799)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | : | Case No. 2:20-cr-182-DBB-3 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | SENTENCING MEMORANDUM AND OBJECTIONS TO PRESENTENCE REPORT |
| JACKSON STUART TAMOWSKI PATTON, | : | |
| | : | |
| Defendant. | | Judge David B. Barlow |

The United States, by and through the undersigned Assistant U.S. Attorney, hereby submits its sentencing memorandum, urging the Court to impose a sentence of imprisonment within the applicable guideline range.

The United States respectfully asserts that the appropriate guideline range exceeds that which is currently calculated in the Presentence Investigation Report ("PSR").[1] Below, the United States has identified the PSR's omissions to assist the Court in

---

[1] Dkt. No. 276.

correctly calculating the guideline range, after considering all relevant guideline factors.[2]

Specifically, the PSR erroneously omits both the leader/organizer enhancement under U.S.S.G. §3B1.1(a) and the official victim enhancement under U.S.S.G. §3A1.2(a). The Court should apply both enhancements because they are supported by a preponderance of the evidence.

### Background

On June 3, 2020, Defendant Patton was charged by criminal complaint with Interstate Arson in violation of 18 U.S.C. § 844(i).[3] On July 23, 2020, the Grand Jury indicted Defendant, together with three co-defendants, for Interstate Arson in a violation of 18 U.S.C. § 844(i).[4] A second superseding indictment was returned on August 17, 2020, which added another co-defendant.[5]

On May 14, 2021, a Felony Information was filed against Defendant alleging a violation of 18 U.S.C. § 231(a)(3), Civil Disorder.[6] On May 21, 2021, Defendant pleaded guilty to the Felony Information.[7] There is no agreement between the parties as to how the court should sentence Defendant.

The PSR correctly applies a base offense level 16 in accordance with U.S.S.G.

---

[2] *See Gall v. United States*, 552 U.S. 38, 49-50 (2007).
[3] PSR ¶ 2.
[4] PSR ¶ 6.
[5] PSR ¶ 8.
[6] PSR ¶ 9.
[7] PSR ¶ 10.

§2X5.1(a); §2B1.1, and §2K1.4(a)(5).[8] The PSR also correctly reduces the offense level by 3 based upon Defendant's clear demonstration of acceptance of responsibility.[9] However, as discussed below, the PSR incorrectly omits a victim-related adjustment and an adjustment for Defendant's role in the offense. The PSR correctly calculates a criminal history score of three and a resulting criminal history category of II.

### *United States' Objections to the Presentence Report*

The United States objects to the PSR because it incorrectly omits 1) the victim-related 3 level increase pursuant to U.S.S.G. §3A1.2(a), and 2) the role-related 4 level increase pursuant to U.S.S.G. §3B1.1(a). The United States addresses the omitted Chapter Three Adjustments in turn.

### a. *Section 3A1.2 – Official Victim Enhancement*

Section 3A1.2 reads, in relevant part, "If (1) the victim was (A) a government officer or employee…and (2) the offense of conviction was motivated by such status, increase by 3 levels."[10]

Here, Defendant impeded, obstructed, and interfered with "specified individuals" for purposes of Section 3A1.2.[11] Defendant conceded in the plea agreement that he willfully and knowingly burned the patrol car with the intent and purpose of obstructing,

---

[8] PSR ¶ 44.
[9] PSR ¶¶ 51-52.
[10] U.S.S.G. §3A1.2(a).
[11] See Application Note 1.

3

impeding, and interfering with law enforcement officers.[12] Importantly, Defendant admitted that his actions were intended to impact law enforcement officers responding to the civil unrest. It is also significant that Defendant's guilty plea did not limit his conduct to obstructing, impeding, and interfering with non-persons or with a government entity or organization.[13]

In *United States v. Polk*, the Fifth Circuit Court of Appeals held that a defendant need not know the names of intended victims to be subject to an enhancement under U.S.S.G. § 3A1.2.[14] Similarly, the Tenth Circuit Court of Appeals opined that the official victim enhancement of Section 3A1.2(a) requires the offense of conviction to be motivated by the status of an "official victim."[15] In the present case, Defendant admitted that his conduct was motivated by the status of the victims because they were law enforcement officers and he intended to interfere and impede them during the civil disorder.

Consequently, the Court should increase the offense level by 3 pursuant to U.S.S.G. §3A1.2(a).

b. *Section 3B1.1(a) – Leader/Organizer Enhancement*

Subsection 3B1.1 reads, in relevant part, "If the defendant was an organizer or

---

[12] See Document 223 at ⁋ 11.
[13] See Application Note 1.
[14] *United States v. Polk*, 118 F.3d 286, (5th Cir. 1997).
[15] *United States v. Blackwell*, 323 F.3d 1256 (10th Cir. 2003).

leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." For the Court to apply this 4-level increase the United States must establish by a preponderance of the evidence that: 1) Defendant was a leader or organizer; 2) of criminal activity; which, 3) involved five or more participates or was otherwise extensive.

> Factors the court should consider include…the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in the planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others…. This adjustment does not apply to a defendant who merely suggests committing the offense."[16]

On May 27, 2020, approximately three days before the Salt Lake City riots, Defendant engaged in a text message conversation with seven other individuals (listed as Drew, Blake, Sean, Nick, Summerblaze, Maddie, and 931644****).[17] Defendant stated, "only good cop is a dead one" and "the aftermath videos are pretty cool. People are straight up destroying cop cars n shit". The next day, on May 28, 2020, Defendant continued the text string asking "where is this saturday protest?"

On May 29, 2020, the day before the Salt Lake City protest, Defendant agitated his friends and associates to violence. He texted "what time does the riot start tomorrow."[18] He continued asking "do i bring machetes to the riot tomorrow" and "we

---

[16] U.S.S.G. §3B1.1 Application Note 4.
[17] See Exhibit 1 containing the 11-page text string.
[18] Exhibit 1 and PSR ¶ 28.

5

can all have one." He then declared, "yes dude. I'm turning it into a riot."[19]

These text messages show Defendant was recruiting accomplices, he was willing to arm them with machetes, and that he was planning and organizing to turn a peaceful protest into a riot.

On May 30, 2020, the day of the riot, Defendant continued pushing for violence. He wrote "i need to figure out how to turn it into [a riot]."[20] Defendant continued, "all I gotta do is sneakily throw a rock through a window" "of the police station" and "i'm breaking things."[21]

In a separate text string between Defendant and Blake, Defendant stated "i'm fully going down there with the intention of breaking things. if you don't want to be near me i understand. but people need to know that salt lake is upset too."[22]

Defendant followed through. He is depicted on video stomping on the undercarriage of the overturned police car, moving burning fabric into the interior of the overturned patrol car, and pouring an apparent liquid accelerant onto the flames. In a separate video Defendant is observed intimidating the driver of a black sedan who Defendant believed to be a police officer.

After the riot Defendant bragged about his crimes. He stated in the text string "lol

---

[19] Id.
[20] Exhibit 1 and PSR ¶ 29
[21] Id.
[22] Exhibit 1 and PSR ¶ 28

adam filmed me starting the fire…we just a fucked a cop car up with a cop in it…he literally had to curb hop his car to get out."[23] Defendant continued boasting "look who started the fire lol" and attached a video to the text. These text messages show that Defendant "claimed right to a larger share of the fruits of the crime" – specifically increased reputation and bragging rights.[24]

The Court should find that a) the nature of Defendant's participation in the commission of the offense, b) Defendant's efforts to recruit accomplices, c) Defendant's claimed right to recognition, d) Defendant's participation in the planning or organizing the offense, and e) the nature and scope of the Defendant's illegal activity, all favor imposition of the 4-level enhancement.

Accordingly, the Court should find by a preponderance of the evidence: 1) that Defendant was a leader and organizer; 2) in criminal activity including arson, property damage, disorderly conduct, and rioting; which, 3) crimes involved five or more participates or was otherwise extensive.[25]

The United States encourages the Court to apply a 4-level increase pursuant to §3B1.1(a). If, however, the Court finds Defendant played an aggravating role not amounting to being a leader or organizer, the Court may apply either a 2- or 3-level

---

[23] Id.
[24] U.S.S.G. §3B1.1 Application Note 4.
[25] The phrase "otherwise extensive" refers to other ways, besides the number of participants, that criminal activity may be considered "extensive." *United States v. Stroman*, 661 Fed. Appx. 600, 2016 U.S. App. LEXIS 16776 (11th Cir. 2016).

7

enhancement.[26] The Background to §3B1.1 states in part that "this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."[27]

### *18 U.S.C. § 3553 Considerations*

The United States will more fully address each of the relevant factors set forth in § 3553 at the time of sentencing. Considering the circumstances of the instant offense and Defendant's criminal history, the United States respectfully recommends that Defendant be sentenced within the applicable guideline range. A guideline sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for serious criminal behavior. A guideline sentence also provides adequate deterrence, both specific and general, and protects the public from further crimes by Defendant.

### *Conclusion*

The United States recommends the Court sentence Defendant to a term of imprisonment within the applicable guideline range. The applicable guideline range should include a 3-level increase for official victim and a 4-level increase for Defendant's aggravating role in the offense. The resulting offense level is 20. With a criminal history category of II, the applicable guideline range is 37-46 months. As such, the United States

---

[26] See §3B1.1(b) and (c).
[27] The term "organization" was not intended to restrict the scope of the guideline to structured enterprises, but denotes any association of people involved in criminal activity. *See United States v. Liebman*, 40 F.3d 544, 549 (2d Cir. 1994).

respectfully requests a sentence between 37-46 months' imprisonment be imposed.

RESPECTFULLY SUBMITTED August 4, 2021.

ANDREA T. MARTINEZ
Acting United States Attorney

/s/ J. Drew Yeates
J. DREW YEATES
Assistant United States Attorney
